UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA A. SNOW,

Plaintiff,

vs.

BEAUMONT TROY HOSPITAL,

Defendant.
______________________________/

Civil Action No. 19-cv-13004
HON. BERNARD A. FRIEDMAN

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I. Introduction

Barbara Snow commenced this action against Beaumont Troy Hospital ("Beaumont") for violating the Family Medical Leave Act, the Americans with Disabilities Act, and the Michigan Persons with Disabilities Civil Rights Act after the hospital terminated her employment.

Before the Court is Beaumont's motion for summary judgment. (ECF No. 19). Snow responded. (ECF No. 22). Beaumont filed a reply. (ECF No. 23). The Court will decide the motion without oral argument pursuant to E.D. Mich. LR 7.1(f)(2). For the following reasons, the Court shall grant the motion.

## II. Background

### *A. Factual History*

Beaumont hired Snow as a telemetry monitor technician in June 2001.[1] (ECF No. 19-2, PageID.108, Tr. 11:21-23; ECF No. 22-15, PageID.555). Her physician first diagnosed her with asthma in 2008. (ECF No. 19-2, PageID.110, Tr. 18:1-7). Dr. Muhammad Kashlan, a pulmonary specialist, began treating Snow in December 2014 as her condition worsened. (*Id.*, PageID.110, Tr. 17:1-8). Exposure to everyday scents and perfumes would make it difficult for her to swallow and breath. (*Id.*, PageID.114, Tr. 35:22-25). Most problematic for Snow was that she developed a severe allergy to a common hospital disinfectant: foam hand sanitizer. (*Id.*, PageID.114, Tr. 34:1-8). The reactions became more severe as the frequency of her exposure to the sanitizer increased. (*Id.*, PageID.114, Tr. 35:22-23; PageID.125, Tr. 80:2-10).

Snow applied for FMLA continuous leave on November 9, 2017 because of her condition. (ECF No. 19-4, PageID.165; ECF No. 19-5, PageID.171-72, ¶ 4). Beaumont granted the leave request. (ECF No. 19-5, PageID.172, ¶ 5). The leave period extended from November 2017 through January 6, 2018, for a total of nine

---

[1] Telemetry monitor technicians observe and interpret patient cardiac rhythms. *Telemetry Technicians: Who They Are & What They Do*, National Telemetry Association, https://nationaltelemetryassociation.org/telemetry-technicians-national-telemetry-association/ (last visited Sep. 8, 2022).

weeks. (*Id.*). Upon returning to work, Dr. Kashlan recommended that Snow (1) minimize her exposure to hand sanitizers and perfumes, and (2) reduce her work schedule from three shifts per week to two. (ECF No. 19-4, PageID.168; ECF No. 19-6, PageID.177). Beaumont approved the reduced work schedule when Snow returned to her job on January 7, 2018. (ECF No. 19-5, PageID.172, ¶ 6; ECF No. 19-7, PageID.179). And the hospital removed the foam hand sanitizer dispenser from Snow's office. (ECF No. 19-8, PageID.183, ¶ 7).

Beaumont also granted Snow FMLA intermittent leave in February 2018, totaling three weeks of statutory leave for the rest of the year. (ECF No. 19-5, PageID.172, ¶ 7-8). She used this remaining leave for medical absences between March 26 and October 12, 2018. (*Id.*, PageID.172, ¶ 9).

But Snow again requested FMLA continuous leave on October 22, 2018, retroactive to October 1. (*Id.*, PageID.173, ¶ 10; ECF No. 19-14, PageID.216-17). Accompanying medical documentation indicated that Snow's asthma had worsened because of her exposure to "soaps and hand sanitizer" and that she "required breathing treatments, inhalers, and steroids." (ECF No. 19-14, PageID.216). Although she already expended all her FMLA leave, Beaumont approved Snow for a medical leave of absence with short-term disability benefits from October 2

through November 3, 2018.[2] (ECF No. 19-5, PageID.173-75, ¶ 10, 15). The hospital, though, denied her FMLA leave request on ineligibility grounds. (*Id.*, PageID.173-74, ¶ 13; ECF No. 19-15, PageID.220; ECF No. 19-16, PageID.222-25).

Snow returned to her position on November 4, 2018, to find that her supervisor had removed the sanitizer dispenser located across from Snow's office. (*Id.*, PageID.174, ¶ 15; ECF No. 19-18, PageID.232, ¶ 5; ECF No. 19-9, PageID.189-90, ¶¶ 6-8). Snow worked nearly all her assigned shifts in November 2018. (ECF No. 19-5, PageID.174-75, ¶ 15; ECF No. 19-18, PageID.232, ¶ 5). Her subsequent attendance proved less consistent.

Snow worked a single shift on December 3 and cancelled her scheduled shifts for the rest of the month. (ECF No. 19-18, PageID.232, ¶ 5). She did not have sufficient compensatory time off (CTO) to cover these absences. (*Id.*). Due to her unexcused absences, Snow's supervisor at the time, Brant Gigliotti, prepared a "performance improvement plan" to review with her on December 16. (*Id.*, PageID.232-33, ¶ 5). When Snow cancelled her scheduled shift for that day as well,

[2] Snow's last day of FMLA leave was October 12, 2018. (ECF No. 19-5, PageID.172, ¶ 9). Short-term disability covered the remaining portion of her leave from October 13 through November 3. (*Id.*, PageID.172-74, ¶¶ 8-10, 15).

Gigliotti contacted Beaumont's human resources department for guidance.[3] (*Id.*, PageID.233, ¶ 5).

Because Snow cancelled three of her scheduled shifts without commensurate CTO, Beaumont determined that she violated the hospital's Reliability Program in a manner warranting her discharge. (*Id.*, PageID.234, ¶ 8). On December 20, 2018, Gigliotti called Snow and terminated her employment. (*Id.*; ECF No. 19-2, PageID.144, Tr. 153:5-9).

*B. Procedural History*

Snow filed a charge with the Equal Employment Opportunity Commission on May 6, 2019. (ECF No. 22-15, PageID.555). The charge alleged that Beaumont (1) failed to accommodate her allergy condition, and (2) did not terminate similarly situated employees who violated the hospital's Reliability Program. (*Id.*). The EEOC purportedly issued her a right-to-sue letter sometime later. (ECF No. 22, PageID.319).[4]

---

[3] Gigliotti previously denied Snow's request to take off her scheduled shift on December 16. (ECF No. 19-18, PageID.233, ¶ 7; ECF No. 19-24, PageID.278). Snow cancelled her shift anyway. (ECF No. 19-18, PageID.233, ¶ 7).

[4] While the right-to-sue letter does not appear in the record, Snow's representation that the EEOC issued the letter "on or about May 6, 2019" is unlikely because the EEOC only first received her charge on that date. (ECF No. 22, PageID.319; ECF No. 22-15, PageID.555). In any event, Beaumont does not contest whether the EEOC issued a right-to-sue letter before Snow filed her complaint.

Snow filed this lawsuit on October 11, 2019. (ECF No. 1). The complaint alleges that Beaumont violated the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, and Michigan's Persons with Disabilities Civil Rights Act, Mich. Comp. Laws § 37.1101 *et seq.* (*Id.*, PageID.3-7). Beaumont now moves for summary judgment on all the claims. (ECF No. 19).

## III. Legal Standards

A moving party is entitled to summary judgment where the "materials in the record" do not establish the presence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c). All the evidence, along with all reasonable inferences, must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV. Analysis

### *A. Family Medical Leave Act*

The FMLA affords employees twelve weeks of unpaid annual leave for, among other things, a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Employees must be reinstated to their position, or "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment," once they return from FMLA leave. 29 U.S.C. § 2614(a)(1).

Employers who violate the FMLA are liable to the employee for damages and such equitable relief as may be appropriate. 29 U.S.C. § 2617(a)(1).

Snow advances two theories of FMLA liability: (1) that Beaumont denied her request for FMLA leave to which she was otherwise entitled, and (2) that the hospital terminated her employment because she asserted her FMLA protected rights. Neither one is persuasive.

1. Interference Theory

The FMLA prohibits employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided" under the staute. 29 U.S.C. § 2615(a)(1). FMLA interference claims require proof that (1) the plaintiff was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) the plaintiff was entitled to FMLA leave, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied or interfered with the employee's FMLA benefits to which she was entitled. *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006).

Snow fails to demonstrate that she was entitled to FMLA leave when Beaumont denied her request on November 20, 2018, *i.e.*, the third and fifth prongs. Beaumont granted Snow's request for FMLA continuous leave running from November 9, 2017 through January 6, 2018, for a total of nine weeks. (ECF No. 19-5, PageID.171-72, ¶¶ 4-5). She returned from this first round of leave on January 7,

2018. (*Id.*, PageID.172, ¶ 5). Beaumont then approved Snow for three additional weeks of FMLA intermittent leave in February 2018, which she exhausted by October 12, 2018. (*Id.*, Page ID.172, ¶¶ 7-9). As a result, Snow had no remaining FMLA leave available when she requested another round of continuous leave to cover all of October 2018. (*Id.*, PageID.172-73, ¶¶ 8-10).

Because Snow expended 12 weeks of FMLA leave within the 12-month period running from November 9, 2017 through November 8, 2018, she was not entitled to FMLA leave on November 20, 2018, when Beaumont denied her second request for continuous FMLA leave. The FMLA interference claim must, therefore, be dismissed.

2. Retaliation Theory

The FMLA likewise forbids employers from discharging or discriminating against "any individual for opposing any practice" that violates the statute. 29 U.S.C. § 2615(a)(2). Since Snow relies exclusively on circumstantial evidence to show that Beaumont terminated her employment in retaliation for taking FMLA leave, this aspect of her FMLA claim is evaluated using the *McDonnell Douglas* burden-shifting framework. *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012).

To establish a prima facie case of FMLA retaliation, the plaintiff must demonstrate that (1) she was engaged in a statutorily protected activity, (2) the defendant knew that she was exercising her FMLA rights, (3) the plaintiff suffered

an adverse employment action, and (4) a causal connection exists between the protected FMLA activity and the adverse employment action. *Donald*, 667 F.3d at 761.

The parties duel strictly over the fourth element, *i.e.*, causation. "[A]ll the plaintiff must do" at the prima facie stage "is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). Here, the month and a half lapse between Snow's return from her overlapping FMLA intermittent/short-term disability leaves (on November 4, 2018) and her termination (on December 20, 2018) is close enough "to meet the low threshold of proof necessary to establish a prima facie case of retaliatory discharge." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283 (6th Cir. 2012); *see also Crawford v. JP Morgan Chase & Co.*, 531 F. App'x 622, 624, 628-29 (6th Cir. 2013) (holding that demotion that occurred one month after returning from leave "satisfies the causation element" of a prima facie FMLA retaliation claim).

Meeting the prima facie burden, though, does not conclude the inquiry in Snow's favor. *McDonnell Douglas*'s next step places the burden on Beaumont "to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action." *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). Beaumont comes forward with sufficient evidence to carry that burden.

An employee may be terminated for violating the employer's attendance policies so long as they are reasonable and neither conflict with nor diminish the protections the FMLA guarantees. *Allen v. Butler County Comm'r*, 331 F. App'x 389, 396 (6th Cir. 2009); *see also Beckman v. Wal-Mart Stores, Inc.*, 739 F. App'x 800, 803 (6th Cir. 2018) (affirming dismissal of FMLA retaliation claim where employer terminated the plaintiff for violating attendance policy); *Greer v. Cleveland Clinic Health Sys. - E. Region*, 503 F. App'x 422, 429-30 (6th Cir. 2012) (same).

Beaumont's Reliability Program authorized the hospital to terminate any employee who incurred three "unexcused absences" in a one-year period. (ECF No. 19-9, PageID.192, ¶ 14; ECF No. 19-11, PageID.204; ECF No. 19-19, PageID.237, ¶ 5). According to the policy, "unexcused absences" occur when, among other things, "an employee does not call in or report to work on a scheduled work day" or "an employee calls in on a day previously requested off that was denied." (ECF No. 19-11, PageID.205). No one disputes that Snow knew about the policy (ECF No. 19-2, PageID.147, Tr. 167:20-22); she understood that she did not possess sufficient CTO to cover her absences in December 2018 (ECF NO. 19-2, PageID.126-127, Tr. 84:11-13, 86:24-25); she incurred at least three unexcused absences in December 2018 (ECF No. 19-18, PageID.232-34, ¶¶ 5, 7-8); and Beaumont terminated Snow

after she violated the policy.[5] (ECF No. 19-2, PageID.126, Tr. 84:11-15; ECF No. 19-18, PageID.232-234, ¶¶ 5, 7-8).

Faced with Beaumont's legitimate, non-discriminatory reason for the termination, the *McDonnell Douglas* burden shifts to Snow to produce adequate evidence demonstrating that Beaumont's proffered reason, *i.e.*, Snow's violation of the Reliability Program, was a pretext for discrimination. *Bryson*, 498 F.3d at 570. "A reason cannot . . . be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (cleaned up).

The plaintiff may establish pretext by showing that the employer's proffered reasons (1) have no basis in fact, (2) did not actually motivate the action, or (3) were insufficient to justify the adverse action. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). Whichever pretextual theory, or combination of theories, the plaintiff pursues, she always bears the ultimate burden of adducing sufficient evidence from which the jury could reasonably reject the employer's explanation and infer that the adverse action stemmed from intentional discrimination. *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003).

---

[5] In addition to not having sufficient CTO to cover her absence on December 16, 2018, Snow cancelled her shift that day after Gigliotti already denied her request to take off. (ECF No. 19-18, PageID.233, ¶ 7; ECF No. 19-24, PageID.278). Both grounds justified treating the December 16 absence as "unexcused." (ECF No. 19-11, PageID.205; ECF No. 19-18, PageID.233, ¶ 7).

Snow maintains that her termination was pretextual because Beaumont did not follow the Reliability Program when it discharged her without previously discussing the implications of her unexcused absences. (ECF No. 22, PageID.331-332). But the Reliability Program does not mandate counseling sessions prior to terminating employees for unexcused absences. (ECF No. 19-11, PageID.202) (stating that counseling sessions are "not required prior to placing an employee in a formal action for violating reliability standards."). And the attendance policy Snow relies upon – which requires "leaders to review the attendance record with employees" after certain violations – did not become effective until January 2019, one month after Beaumont terminated Snow's employment. (ECF No. 22-7, PageID.463, 465).

Snow's emphasis on the "approximately one month" interval between her request for FMLA leave in mid-October 2018 and her termination in December 2018 does not establish pretext either. "[T]he law in this circuit is clear that temporal proximity cannot be the sole basis for finding pretext." *Donald*, 667 F.3d at 763. "[S]uspicious timing is a strong indicator of pretext when accompanied by some other, independent evidence." *Bell v. Prefix, Inc.*, 321 F. App'x 423, 431 (6th Cir. 2009) (cleaned up). That additional evidence is absent from the record.

And insofar as Snow testified that Beaumont did not terminate other employees who violated the Reliability Program she fails to proffer any evidence

suggesting these employees are suitable comparators to evaluate whether Beaumont discharged her for discriminatory reasons. (ECF No. 19-2, PageID.126, Tr. 83:4-22). *See Cooley v. E. Tenn. Human Res. Agency, Inc.*, 720 F. App'x 734, 744 (6th Cir. 2017) (holding that the plaintiff could not establish retaliatory intent on her FMLA retaliation claim "[w]ithout evidence" that she "was treated differently from other employees").

Since Snow falls short of rebutting Beaumont's legitimate, non-discriminatory reason for terminating her, the FMLA retaliation claim cannot withstand summary judgment.

*B. Americans with Disabilities Act*

The ADA forbids covered employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The statute further requires that employers make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the [employer's] business." 42 U.S.C. § 12112(b)(5)(A).

A "qualified individual" is a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Snow claims that Beaumont unlawfully (1) terminated her employment because she suffers from severe allergies to perfume and hand sanitizer, and (2) failed to reasonably accommodate her condition. (ECF No. 1, PageID.5, ¶¶ 33-34). Because she relies on circumstantial evidence to support both aspects of her ADA claim, Snow must again resort to the *McDonnell Douglas* burden-shifting framework to prove that Beaumont discharged her because of her disability. *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008) (employing the *McDonnell Douglas* rubric for ADA discrimination claims); *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007) (same for ADA failure-to-accommodate claims).

To establish a prima facie ADA discrimination claim, plaintiffs must show that (1) they have a disability, (2) they were otherwise qualified for the position, with or without reasonable accommodation, and (3) they were discriminated against solely because of the disability. *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002). The third element requires that the plaintiff suffer an adverse employment action. *Talley*, 542 F.3d at 1107.

To establish a prima facie ADA failure-to-accommodate claim, plaintiffs must show that (1) they have a disability, (2) they are otherwise qualified for the position, with or without reasonable accommodation, (3) the employer knew or had reason to know about the disability, (4) the plaintiff requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004).

Snow's ADA claim, whether premised upon discrimination or a failure to accommodate her condition, runs headlong into the same obstacle: she cannot demonstrate that she was qualified to perform the essential functions of a telemetry monitor technician – *with or without a reasonable accommodation* – when Beaumont terminated her employment on December 20, 2018.[6] Snow testified that she applied for Social Security disability benefits because she could no longer work in any medical field "without being exposed to hand sanitizer." (ECF No. 19-2, PageID.142, Tr. 146:10-12). She acknowledged her own belief that no medical office would be able to accommodate her severe allergies to hand sanitizer. (*Id.*, Tr.

[6] Beaumont additionally argues that Snow cannot establish that the hospital ever failed to provide a necessary accommodation – the last prong in her prima facie ADA failure-to-accommodate case. (ECF No. 19, PageID.91). The Court need not decide this question since Snow cannot demonstrate that she is otherwise qualified to work as a telemetry monitor technician, with or without reasonable accommodation. At any rate, insomuch as Snow contends that Beaumont did not timely implement her request to remove the hand sanitizer dispenser from her office, one of her colleagues attested that the hospital removed the dispenser the same day Snow made her request. (ECF No. 19-8, PageID.183, ¶ 7). Snow never refutes this assertion.

147:7-11). And the Social Security Administration concurred in this assessment because it determined that Snow became disabled, *i.e.*, that she was "unable to do [her] previous work," on December 1, 2018 – over two weeks before Beaumont discharged her. 42 U.S.C. § 423(d)(2)(A). (ECF No. 19-20, PageID.240).

Although "receipt of social security benefits is" not "by itself conclusive evidence that an individual is completely incapable of working," Snow must still adequately explain the discrepancy between the ADA claim (which alleges that she could have performed her job with or without a reasonable accommodation) and her earlier claim for Social Security disability benefits (which asserted that she was unable to perform her "previous work" altogether). *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 429 (6th Cir. 2014); *see also Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). Because Snow makes no effort to reconcile the facial disparity between these two claims, she cannot possibly demonstrate that she could perform the essential functions of her job, with or without a reasonable accommodation. *See Stallings v. Detroit Pub. Sch.*, 658 F. App'x 221, 227 (6th Cir. 2016) (affirming dismissal of ADA claim where the plaintiff "failed to reconcile" the representations in her Social Security disability application with the allegations supporting her ADA claim); *see also Green v. BakeMark USA, LLC*, 683 F. App'x 486, 494 n.8 (6th Cir. 2017) (same).

Since no jury would reasonably view Snow as a "qualified individual" – in other words, as a person who could perform the essential functions of her job, with or without a reasonable accommodation – Beaumont is entitled to summary judgment on the ADA claim.

*C. Michigan Persons with Disabilities Civil Rights Act*

Like the ADA, Michigan's PWDCRA (1) proscribes employer discrimination on account of disability, and (2) requires employers to accommodate a qualified individual's disability barring the imposition of an undue hardship. *See* Mich. Comp. Laws §§ 37.1202(1)(b), (g); 37.1210. The "resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim." *Donald*, 667 F.3d at 764. This case is no exception. Because Snow failed to demonstrate that she is a "qualified individual" under the ADA her PWDCRA claim must be dismissed for the same reason. *See, e.g., Stallings*, 658 F. App'x at 225, 227 (affirming dismissal of ADA and PWDCRA claims where the plaintiff failed to establish her status as a "qualified individual").

Accordingly,

IT IS ORDERED that Beaumont's motion for summary judgment (ECF No. 19) is granted.

s/Bernard A. Friedman
Hon. Bernard A. Friedman
Senior United States District Judge

Dated: September 15, 2022
Detroit, Michigan